## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **KENNETH STAPLES,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 08-200-B-W** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from blindness in his left eye, knee problems, depression, and respiratory problems, was capable of performing work existing in significant numbers in the national economy as of his date last insured for benefits, June 30, 1994. I recommend that the decision of the commissioner be vacated and the case remanded for further proceedings.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 1994, Finding 1,

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on January 16, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Record at 9; that he had severe impairments of blindness in his left eye, knee problems, depression, and respiratory problems, although his eye impairment had not been shown to significantly affect his vocational capacity and, with the exception of his right knee impairment, his other alleged impairments had not been shown to exist prior to his date last insured, Finding 3, *id*. at 9-10 & n.5; that, during the period between his alleged onset date of disability and his date last insured, he retained the residual functional capacity ("RFC") to perform light work with a skill level indicative of an unskilled job, except that he would require a sit/stand option without driving, no more than an hour of reading, and no exposure to heights, machinery, or climbing, Finding 5, *id*. at 14; that, considering his age (42), education (limited), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 15-16;[2] and that he had not been disabled at any time from December 1, 1989, through his date last insured, Finding 11, *id*. at 17.  The Decision Review Board declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[2] The administrative law judge identified two representative jobs existing in significant numbers in the national economy that the plaintiff could perform, those of parking lot attendant and document preparer.  *See* Record at 16.

2

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.   20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff asserts that the administrative law judge erred in failing to (i) assess the frequency of his need to alternate sitting and standing, (ii) resolve an inconsistency between the stated limitation to no driving and the job of parking lot attendant, (iii) accurately assess the impact of his limited language skills, and (iv) include his left eye blindness in his RFC assessment.  *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 10) at 2-6.  I find no error in the administrative law judge's assessment of the plaintiff's need for a so-called sit-stand option but agree that he did err in the remaining respects identified and that those errors collectively warrant reversal of the instant decision and remand for further proceedings not inconsistent herewith.

## I.  Discussion

### A.  Sit-Stand Option

Social Security Ruling 83-12 provides, in relevant part:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. . . .  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work.

***

> Unskilled types of jobs are particularly structured so that a person cannot
> ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or
> stand, a VS [vocational specialist] should be consulted to clarify the implications
> for the occupational base.

Social Security Ruling 83-12, reprinted in *West's Social Security Reporting Service* Rulings

1983-1991 ("SSR 83-12"), at 39-40.

> Social Security Ruling 96-9p provides, in relevant part:

> An individual may need to alternate the required sitting of sedentary work by
> standing (and, possibly, walking) periodically.   Where this need cannot be
> accommodated by scheduled breaks and a lunch period, the occupational base for
> a full range of unskilled sedentary work will be eroded.  The extent of the erosion
> will depend on the facts in the case record, such as the frequency of the need to
> alternate sitting and standing and the length of time needed to stand.  The RFC
> assessment must be specific as to the frequency of the individual's need to
> alternate sitting and standing.  It may be especially useful in these situations to
> consult a vocational resource in order to determine whether the individual is able
> to make an adjustment to other work.

Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings

1983-1991 (Supp. 2008) ("SSR 96-9p"), at 158.

The plaintiff argues that the administrative law judge erred in finding the sit-stand option

readily available, rather than an exception to the rule, at the light exertion level, making no

medically-based assessment of the frequency of alternation required, and including in his

hypothetical to the vocational expert ("VE") no description of that frequency.  *See* Statement of

Errors at 3.

I find no error.  The administrative law judge did make, and transmit to the VE, a finding

as to the frequency of alternation required.   He described a need for an option to "sit and stand

whenever you want[.]"  Record at 37.  The VE understood that the jobs had to "allow sit/stand at

will."  *Id*. at 59.  The administrative law judge did not presume jobs with such an option to be

4

readily available.  To the contrary, as contemplated in SSR 83-12 and SSR 96-9p, he elicited VE testimony to the effect that specific jobs permitted the specific sit-stand option described.  There was no error.

### B.  Inconsistency Between Driving Ban and Parking Lot Attendant Job

The plaintiff next contends that the administrative law judge erred at Step 5 in determining him capable of performing the job of parking lot attendant despite an undetected discrepancy between the VE's testimony and the description of that job set forth in the Dictionary of Occupational Titles ("DOT") (U.S. Dep't of Labor, 4th ed. rev. 1991).

Per Social Security Ruling 00-4p, "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."  Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 00-4p"), at 244.

The VE testified that someone precluded from "driving in the course of the job" could perform the job of parking lot attendant, DOT § 915.473-010.  *See* Record at 58-60.  However, the DOT describes that job as follows:

> Parks automobiles for customers in parking lot or storage garage: Places numbered tag on windshield of automobile to be parked and hands customer similar tag to be used later in locating parked automobile.  Records time and drives automobile to parking space, or points out parking space for customer's use. Patrols area to prevent thefts from parked automobiles. Collects parking fee from customer, based on charges for time automobile is parked.  Takes numbered tag from customer, locates automobile, and surrenders it to customer, or directs customer to parked automobile.  May service automobiles with gasoline, oil, and water.  When parking automobiles in storage garage, may be designated Storage-Garage Attendant (automotive ser.).  May direct customers to parking spaces.

DOT § 915.473-010.

In the absence of recognition of, and explanation for, the discrepancy, the administrative law judge erred in relying on the parking lot attendant job to meet the commissioner's Step 5 burden of showing that there was work existing in significant numbers in the national economy that the plaintiff could perform as of his date last insured.[3]

### C.  Error in Assessing Reading Deficit

The plaintiff next complains that the administrative law judge erred in finding that he was limited to "no more than an hour of reading" a day rather than analyzing whether he met the minimum level of language skills specified in the scale of General Educational Development ("GED") of the DOT.  *See* Statement of Errors at 4-5.  While the question is a closer one, I am persuaded that the issue requires further adjudication.

At his hearing, the plaintiff testified that he obtained a high school diploma nine years late.  *See* Record at 27-28.  When the administrative law judge asked what would stop him from doing a job in which he could sit and stand whenever he wanted to and did not have to drive, climb, be high up, or work with dangerous tools or hazardous machinery, he responded: "Mostly my reading and writing[.]"  *Id*. at 35.  He and the administrative law judge then engaged in the following colloquy:

> Q      What if you didn't have to do more than just an hour's worth a day of reading and writing?
>
> A      Oh, something like that I might be able to an hour a day but –
>
> Q      To read, yeah.  Read or write an hour a day.  That you think you could do?

---

[3] In the context of discussing whether the parking lot attendant job accommodated a need to alternate sitting and standing, the VE described parking lot attendants as "typically in a booth[,]" although it was "conceivable that in between working the booth and the parking lot that [the plaintiff] could move around outside."  Record at 60.  I do not find this to constitute an explanation for the discrepancy with the DOT.  It is not clear that the VE was aware of the discrepancy.  In addition, it is not clear what portion of the number of such jobs the VE testified existed reflected jobs requiring performance of driving duties.

      A      To tell you the truth, Your Honor, I have never read a book in my whole life.

      Q      Well, I guess what I am asking you is . . . that you are such a young man, I am really wondering why if there was a job available that let you sit and stand whenever you wanted so that you could rest when you needed to or stretch when you needed to and wouldn't require you to be around machinery that was dangerous or heights or require you to climb, I don't see why you couldn't do that full-time.  Do you?  If it exists, the job exists.

      A      I don't know if I could or not, Your Honor.

      Q      Can you think of any reason that you couldn't, any specific reason that you couldn't do that kind of job full-time?

      A      If it requires reading and writing, if I read something, by the time I'm done trying to read something, by the time I'm done with it, I don't have any idea what it said because it takes –

      ALJ:   All right.

*Id*. at 35-36.  Later in the hearing, in response to questions from his attorney, the plaintiff testified that he received special education all through school, ever since grade school, in English, spelling, reading, and writing, that he recognizes labels on cans of food at the store more than reads them, that he cannot read a newspaper although he can sometimes read headlines, and that he cannot fill out a job application because he does not know how to spell even simple words correctly.  *See id*. at 40-41.

This was consistent with information that the plaintiff conveyed to a Social Security interviewer who completed his application for benefits via teleclaim.  *See id*. at 145, 148, 156-57, 160.  The interviewer noted that the plaintiff "could not read the names of his prescriptions so he had to spell them for me while reading the letters off the bottle."  *Id*. at 145.

The administrative law judge found the plaintiff to have acquired a "limited school education," Finding 8, *id*. at 16, which corresponds with "a 7th grade through the 11th grade level of formal education" and an "ability in reasoning, arithmetic, and language skills, but not

enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs[,]" 20 C.F.R. § 404.1564(b)(3).   While a claimant is presumed to have acquired skills commensurate with his or her level of education, the presumption is rebuttable:

> [T]he numerical grade level that you completed in school may not represent your actual educational abilities.   These may be higher or lower.   However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities.

*Id*. § 404.1564(b).

The plaintiff contends that "[w]hile the ALJ correctly found that [he] had a critical reading deficit, his translation of that deficit into his RFC assessment failed to reflect the true functional limitation and its impact on vocational adjustment."   Statement of Errors at 4.   The plaintiff argues that the issue should have been framed in terms of whether he met the minimum level of language skills specified in the GED.   *See id*. at 4-5.   He submits that his language skills are below even Level 1, in which case he would be unable to perform either job detailed by the VE given that the job of parking lot attendant has a language level of 1 on the GED scale and the document preparer job has a language level of 2.   *See id*. at 5 & n.8.

The administrative law judge evidently meant to credit the plaintiff's testimony as to his reading limitations in finding him capable of performing work entailing reading for no more than an hour a day.   However, I agree with the plaintiff that his testimony raises a serious issue not just as to the length of time for which he could read but also as to the quality of his reading skills. The DOT describes the job of parking lot attendant as requiring Level 1 language skills, entailing, *inter alia*, an ability to "[r]ecognize [the] meaning of 2,500 (two- or three-syllable) words[,]" "[r]ead at [a] rate of 95-120 words per minute[,]" and "[c]ompare similarities and differences between words and between series of numbers."   DOT § 915.473-010.   The job of

8

document preparer is described as requiring Level 2 language skills, entailing, *inter alia*, possession of a "[p]assive vocabulary of 5,000-6,000 words" and an ability to "[r]ead at [a] rate of 190-215 words per minute[,]" to "[r]ead adventure stories and comic books, looking up unfamiliar words in [the] dictionary for meaning, spelling, and pronunciation[,]" and "[r]ead instructions for assembling model cars and airplanes."   DOT § 249.587-018.   The plaintiff's testimony, if credited, does indeed indicate that his language skills were below GED Level 1.   In that scenario, the plaintiff would be incapable of performing either representative job as described in the DOT.[4]

Because, from all that appears, the administrative law judge meant to credit the plaintiff's testimony concerning his reading deficit, but that testimony is not consistent with the demands of the two representative jobs the plaintiff was found capable of performing, remand is required for further proceedings clarifying the extent of the plaintiff's reading and writing deficits and considering whether, in view of those deficits as clarified, he was capable as of his date last insured of performing work existing in significant numbers in the national economy.

### D.  Omission From RFC of Sequelae of Left Eye Blindness

The plaintiff finally faults the administrative law judge for failing to include, in his RFC finding, any restriction resulting from the plaintiff's left eye blindness.   *See* Statement of Errors at 5-6.

The plaintiff is blind in his left eye and has been since prior to June 30, 1994, his date last insured.   *See, e.g.*, Record at 251.   The administrative law judge officially deemed the left eye

---

[4] To complicate matters, the VE gave seemingly conflicting testimony as to the reading demands of the document preparer job.  He testified that it was "a rather simple job" and that "[t]ypically it would take place in an office setting, for instance but it's more mechanical and it is – he would need to read what he's photocopying."  Record at 61.  However, a moment later, in response to a direct question whether there would be a reading requirement on the job, the VE answered "[n]o."  *Id.*  To the extent that the VE meant to testify that there are no reading requirements, the DOT indicates otherwise.  *See* DOT § 249.587-018.

blindness a severe impairment, but qualified that finding by stating: "As will be seen later in the decision, the claimant's eye impairment has not been shown to significantly affect his vocational capacity[.]"  Finding 3, *id*. at 9-10 & n.5.  Later in his Step 2 discussion, the administrative law judge observed: "After all, despite the occurrence of this [eye] injury in 1981, [the plaintiff] was able for several years thereafter to work full time as a carpenter and laborer."  *Id*. at 13 n.36.

In the context of his Step 4 RFC finding, the administrative law judge elaborated: "Although the FEDRO [Federal Reviewing Official] found [the plaintiff's] left eye blindness a severe medically determinable impairment, I reject this conclusion.  My reason for doing so is simple: despite the existence of this impairment, which occurred in 1981, the claimant was able for more than two years to work 47 ½ hours a week as a carpenter-laborer."  *Id*. at 14 n.39.  The administrative law judge omitted any blindness-related restriction in setting forth the plaintiff's RFC.  *See* Finding 5, *id*. at 14.

In so doing, the administrative law judge ignored the sole medical expert RFC assessment of record addressing the subject of the plaintiff's blindness, completed by Disability Determination Services ("DDS") consultant Robert Hayes, D.O. on March 1, 2007.  *See id*. 290-97.[5]  Dr. Hayes found the plaintiff to have limitations in near acuity vision, far acuity vision, depth perception, and field of vision.  *See id*. at 293.  He noted that there was insufficient medical evidence of record to estimate RFC limits resulting from the left eye blindness apart from those relating to monocular vision.  *See id*. at 297.  However, the restrictions he did find are consistent with those described by the plaintiff at hearing.  *See id*. at 35 ("My eye is kind of a hazard.  If somebody comes up beside[] me and I don't hear them, it really jumps me bad and I hit my head quite a bit on doorframes and stuff like that when I turn around.  It's just –

---

[5] A medical expert was present and testified briefly at the plaintiff's hearing, but he did not address the plaintiff's RFC or the impact of monocular vision on the plaintiff's work capacity.  *See* Record at 55-57.

clumsy."). In ignoring Dr. Hayes' expert conclusions and substituting his own judgment as to the extent of restriction the plaintiff suffered from his limited vision, the administrative law judge erred. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted); *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record").[6]

While this might have been harmless error in the context of a Step 4 finding that the plaintiff retained the RFC to return to his past relevant work, the error was not evidently harmless at Step 5. Nothing in the relevant DOT descriptions of the jobs of parking lot attendant and document preparer indicates that vision limitations such as those found by Dr. Hayes are irrelevant, *see* DOT §§ 249.587-018, 915.473-010, and there is of course no VE testimony of record addressing the impact of such vision limitations on those jobs.[7]

Reversal and remand accordingly are required for inclusion of restrictions related to the plaintiff's left eye blindness in his RFC and consideration of whether, in view of those restrictions, as of his date last insured, he could perform work existing in significant numbers in the national economy.

---

[6] The plaintiff unhelpfully cites *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000), for the proposition that blindness in one eye is a severe nonexertional impairment. *See* Statement of Errors at 5 n.9. *Sykes* does not stand for that proposition. Instead, the court in *Sykes* held that the administrative law judge erred in finding, in the absence of any evidence, that the plaintiff's left eye blindness, which he deemed severe, did not significantly erode the job base for light work. *See Sykes*, 228 F.3d at 261, 273-74.

[7] The DOT indicates that capacities for near acuity, far acuity, depth perception, and field of vision frequently are used in the job of parking lot attendant. *See* DOT § 915.473-010. While, according to the DOT, capacities for far acuity, depth perception, and field of vision are not pertinent to the document preparer job, the capacity for near acuity is frequently used in that job. *See id.* § 249.587-018.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be

**VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of January, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge